**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

O.E.O.,

Petitioner,

v.

Fred Figueroa, et al.,

Respondents.

No. CV-25-02283-PHX-DWL (MTM)

**ORDER**

In June 2025, Petitioner initiated this action by filing a "complaint and petition for writ of habeas corpus." (Doc. 1.) Petitioner's overarching contention was that federal officials had "incorrectly determined [him] to be a twenty-two-year-old adult," even though he was "a fifteen-year-old unaccompanied child from Afghanistan," and had improperly placed in an adult ICE detention facility based on that erroneous determination. (*Id.* ¶¶ 1-2.) In the prayer for relief, Petitioner requested an order compelling the relevant officials to promptly "complete an age determination" and "release [him] from . . . ICE's custody to [his] previous ORR [Office of Refugee Resettlement] facility, and then to his sponsor." (*Id.* at 30.) Petitioner also requested other forms of related injunctive and/or declaratory relief. (*Id.* at 29-30.)

After much litigation activity, but before being formally compelled to do so, Respondents voluntarily agreed to conduct a new age determination and to transfer Petitioner out of the adult detention facility where he was being held and into a shelter for unaccompanied alien children. (Doc. 75.) Next, on February 13, 2026, Respondents gave

"notice that ORR has rendered a new age determination decision and determined that Petitioner is a minor." (Doc. 87.)

Upon receipt of that notice, the Court ordered the parties to file status reports "indicating what claims, if any, are now moot and what further proceedings are necessary to resolve any remaining claims." (Doc. 89.)  In his response, Petitioner acknowledged that Counts Seven, Eight, and Nine of his petition are moot but argued that his remaining claims remain live because they seek both (1) "declaratory relief confirming Respondents[] have held Petitioner in violation of the U.S. Constitution, the TVPRA [Trafficking Victims Protection Reauthorization Act], and the APA"; and (2) "injunctive relief, including an order requiring Respondents to release Petitioner to his sponsor, in compliance with the requirements set forth in 8 U.S.C. §1232(c)(2)(B) and the ORR Policy Guidance, both of which require prompt release to the least restrictive setting." (Doc. 90.)  Upon receipt of Petitioner's status report, the Court ordered Respondents "to file a status update regarding Petitioner's transfer to a sponsor." (Doc. 92.)

The transfer to a sponsor did not occur immediately following the issuance of that order, and Petitioner accused Respondents of delaying the transfer in bad faith.  (*See generally* Doc. 97.)  As a result, the Court authorized Petitioner to file a motion for injunctive relief.  (*Id.*)  On April 24, 2026, Petitioner did so—his motion seeks a preliminary injunction that would, among other things, require Respondents to "immediate[ly] release [him] to his sponsor, M.O." (Doc. 99 at 2.)

On May 8, 2026, Respondents filed a response to the motion for preliminary injunction. (Doc. 101.)  The response states that "[o]n May 2, 2026, Petitioner was released from O.R.R. custody and reunified with his verified sponsor." (*Id.* at 1.)  The response further states that "[t]here are no release conditions or any further restrictions that were placed on Petitioner's release." (*Id.*)  Given this development, Respondents argue that "[t]he Court no longer has jurisdiction" because (1) "Petitioner is no longer 'in custody' within the meaning of the habeas statute and cannot meet his burden to show that his release did not moot his habeas claim"; and (2) "[t]his case is now clearly moot" because "[t]here

is no further effective relief that this Court can provide." (*Id.* at 1-2.)

On May 15, 2026, Petitioner filed a reply. (Doc. 102.) Petitioner contends this action is not moot because it "was never just about [his] release" and because his pleading contains not only habeas claims but also civil claims. (*Id.* at 1.) With this clarification in mind, Petitioner argues that "Respondents' mootness arguments fail for two reasons: (1) the voluntary cessation exception to mootness applies, and (2) release from custody does not moot a case when collateral consequences can be redressed by success on the petition." (*Id.* at 5.) Petitioner contends that "[a]t every step of this litigation, Respondents have acted only under the pressure of a deadline resulting from motions practice and discovery requests, or after an explicit order from this Court" and likens this case to *Ms. L v. U.S. Immigration & Customs Enforcement*, 302 F. Supp. 3d 1149 (S.D. Cal. 2018). (*Id.* at 5-6.) Petitioner also emphasizes that "Respondents have made no assurances that they will not again unlawfully age redetermine O.E.O., re-detain O.E.O. absent a hearing before a neutral arbiter, or infringe on O.E.O.'s ability to access immigration relief under the TVPRA." (*Id.* at 6.) Finally, Petitioner also contends that he still has three outstanding requests for relief: "(1) declaring that ICE's and ORR's actions violated the APA, the TVPRA, and the Constitution; (2) enjoining Respondents from using the unlawful age determination as a basis to deny immigration relief, and; (3) ordering that if Respondents seek to re-detain O.E.O., they must afford him a hearing before a neutral decisionmaker, as required by the Due Process Clause of the Fifth Amendment, to determine whether redetention would be justified." (*Id.* at 7-8.)

The first issue to be addressed is Petitioner's pending motion for a preliminary injunction. The Court concludes this motion should be denied. The first category of relief Petitioner seeks is an injunction compelling his "immediate[] release[] into the custody of his sponsor, M.O." (Doc. 99-4 at 2.) Because that act has now occurred, there is no basis for issuing a preliminary injunction to compel it to occur. Indeed, one of the required showings to obtain a preliminary injunction is that the movant "is likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council,*

*Inc.*, 555 U.S. 7, 20 (2008).  The only theoretical way Petitioner could be harmed by the denial of his first request for relief is if Respondents subsequently detained him and removed him from O.M.'s custody.  True, Respondents have not specifically disavowed an intention to do so—an omission that bears on whether this *action* should be dismissed under the voluntary-cessation doctrine.  But that inquiry is distinct from whether Petitioner is entitled, on this record, to the extraordinary remedy of a preliminary injunction.  *Cf. Moore v. Thieret*, 862 F.2d 148, 150 (7th Cir. 1988) (dismissing, as moot, a prisoner's appeal from the denial of his request for a preliminary injunction compelling his transfer to a different prison, in light of the state's voluntary decision to complete the transfer while the appeal was pending, and emphasizing that "[w]e are not asked to dismiss the *suit* as moot . . . but only to dismiss the appeal from the denial of a preliminary injunction").  Petitioner has not shown it is likely he will be redetained and taken away from M.O. in the absence of a preliminary injunction—instead, he has merely shown that this development is not impossible.  More is required under *Winter*.

For similar reasons, Petitioner is not entitled to the remaining categories of relief specified in his motion.  Petitioner's second request is for an injunction barring Respondents from "re-detain[ing] [him] before he is afforded a hearing before a neutral decisionmaker, as required by the Due Process Clause of the Fifth Amendment, to determine whether re-detention would be justified"; Petitioner's third request is for an injunction barring Respondents "from continuing the apply the May 21 Memo," *i.e.*, the initial determination that Petitioner was an adult; and Petitioner's fourth request is for an injunction barring Respondents "from causing [him] any greater harm during the pendency of this litigation, such as by transferring him anywhere other than to an ORR shelter in California if he is not immediately released to his sponsor." (Doc. 99-4.)  But it is purely speculative, at least on this record, that Respondents will seek to redetain Petitioner, reinstitute or otherwise apply the May 21 Memo, or engage in any further transfer-related activity.  Respondents may not have taken the actions they eventually took in this case absent prodding by Petitioner's counsel (and absent the looming threat of judicial

- 4 -

compulsion), but the bottom line is that Respondents' last actions directed toward Petitioner have been to voluntarily agree to conduct a new age determination, to voluntarily transfer Petitioner out of an adult detention facility and into a youth shelter pending the completion of the new age determination, to conclude on the basis of the new age determination that Petitioner is a minor, and to release Petitioner from the youth shelter and allow him to reside, without conditions, with his sponsor, O.M.  At no point have Respondents hinted they intend to revisit any of these decisions.  Thus, Petitioner has not shown that he is "*likely* to suffer irreparable harm in the absence of" the requested preliminary injunctive relief.  *Winter*, 555 U.S. at 20 (emphasis added).

The remaining issue to be addressed is whether this action should be dismissed as moot.  As noted, Petitioner contends this action is not moot in light of the "voluntary cessation exception to mootness."  This argument has potential merit.  Although the Ninth Circuit once seemed to express doubt about whether "this doctrine deals with a petition for habeas corpus," *Picrin-Peron v. Rison*, 930 F.2d 773, 776 (9th Cir. 1991), the Ninth Circuit subsequently applied it to decline to find mootness in a habeas action in which the petitioner had been released from custody during the pendency of the action.  *Diouf v. Napolitano*, 634 F.3d 1081, 1084 n.3 (9th Cir. 2011) ("Before oral argument, we asked the parties to brief whether Diouf's claims have become moot given that he has been free on bond since February 2007 and the government has not to date elected to redetain him (despite our decision vacating the preliminary injunction that had led to the immigration court hearing that had ordered him released on bond).  Consistent with the position taken by both sides in their supplemental briefing, we are satisfied that his claims have not become moot.  The voluntary cessation exception to mootness applies because—absent action by this court—the government could redetain Diouf, and deny him a bond hearing, at any time.  The government has offered no assurance that Diouf will not be redetained; *Picrin-Peron v. Rison*, 930 F.2d 773, 775-76 (9th Cir. 1991), is therefore distinguishable.").

With that said, although Respondents have failed to provide an affirmative assurance that Petitioner will not be redetermined to be an adult and redetained on that

basis, they have also not refused to provide an assurance on those topics. Due to the manner in which the briefing sequence unfolded, it may be that Respondents were simply unaware of the necessity of providing an assurance on those topics in order to avoid the voluntary-cessation exception to mootness. Accordingly, through this order, the Court will provide Respondents with an opportunity to do so.

Assuming Respondents provide an appropriate assurance on those topics, the Court will dismiss this action as moot. To the extent Petitioner is asserting habeas claims, the rule in the Ninth Circuit is that "for a habeas petition to continue to present a live controversy after the petitioner's release or deportation, . . . there must be some remaining 'collateral consequence' that may be redressed by success on the petition." *Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007). "For a collateral consequence to present a continuing live case or controversy, it must be a *concrete* legal disadvantage, and not merely a speculative or contingent injury." *Salazar-Leyva v. Sessions*, 2019 WL 1936239, *2 (N.D. Cal. 2019) (citation omitted). Here, Petitioner has not identified any concrete legal disadvantage he may suffer in a future proceeding as a result of Respondents' initial (but now superseded) determination that he was an adult. *Cf. Corral v. Barr*, 776 F. App'x 953, 953-54 (9th Cir. 2019) ("Following Corral's release under an order of supervision, the district court properly dismissed as moot Corral's habeas petition challenging the initial bond determination made by the immigration judge (IJ). . . . The IJ's prior bond determination also does not give rise to any collateral consequences in light of Corral's release, particularly as Corral merely speculates that the prior bond determination might be erroneously utilized in his removal proceedings if he is detained in the future. Corral similarly does not demonstrate that the voluntary cessation exception to mootness applies because his release from custody has completely and irrevocably eradicated the effects of the alleged violation premised on errors in the IJ's bond determination. As a result, Corral's habeas petition was rendered moot by his release because successful resolution of his pending claims could no longer provide the requested relief.") (cleaned up).

Meanwhile, to the extent Petitioner is asserting non-habeas civil claims, the only

outstanding claim for relief identified by Petitioner, apart from his (potentially moot) requests for injunctive relief, is a request for declaration that Respondents' actions toward him were unlawful.  (Doc. 102 at 7.)  But there would be no basis for granting such relief if the remainder of the case were moot.  "Since its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants."  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).  "A case or controversy exists justifying declaratory relief only when the challenged . . . activity . . . is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the . . . parties."  *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 867 (9th Cir. 2017) (cleaned up).  *See also Spencer v. Kemna*, 523 U.S. 1, 18 (1998) (federal courts "are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong"); *Siino v. Foresters Life Ins. & Annuity Co.*, 133 F.4th 936, 943 (9th Cir. 2025) ("[T]he DJA creates a permissive scheme under which a district court may, but need not, declare the rights and other legal relations of any interested party.  Thus, the district court has discretion to determine whether maintaining jurisdiction over the declaratory action would be appropriate.  In evaluating the propriety of a declaratory action, the district court is to consider a variety of factors, including whether retaining jurisdiction would . . . serve a useful purpose in clarifying the legal relations at issue.") (cleaned up); *S. Jackson & Son, Inc. v. Coffee, Sugar & Cocoa Exch. Inc.*, 24 F.3d 427, 431 (2d Cir. 1994) ("[W]here the remedy sought is a mere declaration of law without implications for practical enforcement upon the parties, the case is properly dismissed.") (cleaned up).

…

…

…

…

…

Accordingly,

**IT IS ORDERED** that:

1.      Petitioner's motion for preliminary injunction (Doc. 99) is **denied**.

2.      Within 14 days of the issuance of this order, Respondents may attempt to provide the sort of assurances necessary to avoid application of the voluntary-cessation doctrine.

Dated this 8th day of June, 2026.

Dominic W. Lanza
United States District Judge

- 8 -